**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**GUADALUPE FRAUSTO,**

    Plaintiff,

    v.                                                     **CASE NO. 3:04-cv-894-J-16TEM**

**ARTHUR PICKLO, individually and as**
**an employee of the Florida Department of**
**Financial Services, formerly known as the**
**Florida Department of Insurance, Division**
**of Insurance Fraud, DON TAYLOR,**
**individually and as an employee of the**
**Florida Department of Financial Services,**
**formerly known as the Florida Department**
**of Insurance, Division of Insurance Fraud,**
**and RON W. POINDEXTER, individually and**
**as Director of the Division of Insurance Fraud,**

    Defendants.
_____/

**O R D E R**

Before the Court is the Defendants, Don Taylor and Ron W. Poindexter's, Motion to Dismiss First Amended Complaint (Dkt. 40), with Memorandum of Law in Support (Dkt. 41). Inexplicably, the Plaintiff, Guadalupe Frausto, has not filed a timely response to the Motion to Dismiss.[1]

**I. Background**

The Plaintiffs filed their original three-count Complaint (Dkt. 1) on September 14, 2004, alleging civil rights claims based on 42 U.S.C. §1983. The Plaintiffs allege that Defendant Arthur Picklo was a law enforcement officer with the Florida Department of Insurance, Division of Fraud, who was working undercover investigating workers' compensation fraud by construction companies, including

---

[1]The Defendants' Motion to Dismiss and Memorandum of Law were filed on March 17, 2005. On March 7, 2005, the Plaintiff's counsel filed a Notice of Intention to Withdraw as Counsel (Dkt. 36). However, the Plaintiff's counsel has never moved the Court for leave to withdraw as counsel, nor has he filed a response to the Defendants' Motion to Dismiss.

the company that employed Plaintiff Guadalupe Frausto. Defendant Taylor was allegedly Picklo's immediate supervisor, while Defendant Poindexter was the director of the Division of Insurance Fraud.

The Plaintiffs allege that on September 15, 2000, Frausto was driving in Jacksonville, Florida, after having cashed a $35,000 payroll check from his employer, when Picklo displayed his badge and asked Frausto to pull off the interstate. Frausto apparently believed that Picklo was a contractor named "Tony Tozzi," whom he had seen at his worksite, and therefore he pulled off the highway and stopped his vehicle. Defendant Picklo then allegedly entered the Plaintiff's vehicle, demanded the money, and then pulled out a gun and shot Frausto in the face and neck, causing him serious and permanent physical and psychological injuries.

In addition to stating a Section 1983 claim against Picklo in Count I of the First Amended Complaint (Dkt. 34), based on the Fourth, Fifth and Fourteenth Amendments, Count II attempts to allege Section 1983 claims against Taylor and Poindexter based on their failure to train, supervise, control and discipline Picklo, with deliberate indifference to the Plaintiff's constitutional rights. The Court previously dismissed this Count in the original Complaint against Defendants Taylor and Poindexter, without prejudice, by Order of February 7, 2005 (Dkt. 23). The Court also dismissed Count III of the Complaint, which attempted to state a consortium claim on behalf of the Plaintiff's spouse, and it granted judgment as a matter of law in favor of Tom Gallagher, Chief Financial Officer of the Florida Department of Insurance.

The Plaintiff previously alleged that Picklo was acting under the supervision and direction of the Defendants, and yet they "knowingly, recklessly or with deliberate indifference and callous disregard of Plaintiff's rights, failed to instruct, supervise, control and discipline" Picklo to refrain from violating citizens' constitutional rights. The Plaintiff further claimed that the individual Defendants "had knowledge or, had they diligently exercised their duties to instruct, supervise, control and

2

discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done . . . were about to be committed," and that the Defendants therefore ratified Picklo's unlawful conduct. The Court agreed with Taylor and Poindexter, however, that the Plaintiff did not allege any specific actions the Defendants could have, or should have, taken to prevent the tragic crimes committed by Picklo.

The Court specifically held that there was nothing in the Complaint's allegations that would show how additional supervision or training would have prevented Picklo's isolated criminal acts. Nor were there any allegations to demonstrate that the Defendants knew or should have known that Picklo may have had tendencies to commit such violent acts based on his history, or that the Defendants somehow approved of or ratified these independent, terrible acts. As such, the allegations in the original Complaint were insufficient to meet the Plaintiffs' heavy burden in defeating the Defendants' defense of qualified immunity. Moreover, the Court explicitly held that the Plaintiff's Section 1983 claims against the individual Defendants in their official capacity are barred by the Eleventh Amendment.

In their current Motion to Dismiss directed at the First Amended Complaint, the Defendants point out that not only has the Plaintiff improperly attempted to revive his "official capacity" claims against the individuals, but they argue that his added allegations remain insufficient to defeat the defense of qualified immunity. The Defendants direct the Court to paragraphs twenty (20) through twenty-eight (28) of the First Amended Complaint, as these paragraphs contain the only additional allegations not included in the original Complaint. The Defendants argue that these additional allegations are still insufficient to meet the Plaintiff's heavy burden in defeating qualified immunity. Therefore, they contend that dismissal of Count II with prejudice is now appropriate.

**II. Standard of Review**

To prevail on a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, the Defendants must show beyond all doubt, based on the four corners of the complaint, that the Plaintiff can prove no set of facts in support of his claims such that dismissal is proper. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Hishon v. King & Spaulding, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); Luckey v. Harris, 860 F.2d 1012, 1016 (11th Cir. 1988). In other words, courts generally disfavor motions to dismiss and only grant such motions in rare circumstances. See Gasper v. La. Stadium and Exposition Dist., 577 F.2d 897, 900 (5th Cir. 1978). Moreover, the Court is required to accept all of the Plaintiff's well-pleaded facts as true, and all reasonable inferences are to be construed in the light most favorable to the Plaintiff. See, e.g., Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274, n.1 (11th Cir. 1999); Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998); Rickman v. Precisionaire, Inc., 902 F. Supp. 232, 233 (M.D. Fla. 1995).

**III. Discussion**

Taylor and Poindexter first argue that because the Plaintiff's "official capacity" claims were previously dismissed by the Court as barred by the Eleventh Amendment, his attempts to re-allege these claims for monetary relief in the First Amended Complaint is "astonishing in light of clear and longstanding United States Supreme Court precedent that such claims are barred by the Eleventh Amendment." The Court agrees. These claims against the Defendants in their official capacities will be dismissed, with prejudice. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) (reasoning that suit against a state official in his official capacity is "no different from a suit against the State itself"); see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).[2]

---

[2]The Defendants argue that the Plaintiff's attempts to once again bring the "official capacity" claims in the First Amended Complaint constitutes bad faith, such that they should be entitled to attorney's fees and costs in defending these frivolous claims. The Court notes that it previously dismissed Count II of the Complaint without prejudice, and in any event, the issue of fees and costs is not properly before the Court.

As to the Section 1983 claims made against them in their individual capacities, Taylor and Poindexter once again argue that even taking into account the limited additional allegations in the First Amended Complaint, they are still entitled to the defense of qualified immunity. Because the Defendants were allegedly acting within the scope of their official discretionary authority, and the Plaintiff cannot show that they violated any of Frausto's clearly established constitutional rights, Taylor and Poindexter argue that they are entitled to immunity from the Section 1983 claims in the First Amended Complaint. See, e.g., Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991); Harbert Intern., Inc. v. James, 157 F.3d 1271, 1281-82 (11th Cir. 1998); Lumley v. City of Dade City, Fla., 327 F.3d 1186, 1194 (11th Cir. 2003); Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003); Whitehord v. Harrelson, 758 F.2d 1416 (11th Cir. 1985).

The Defendants argue that the Plaintiff's continued attempts to state Section 1983 claims based on a "deliberate indifference to Frausto's constitutional rights" fail due to qualified immunity. See also Estelle v. Gamble, 429 U.S. 97 (1976); Farmer v. Brennan, 511 U.S. 825, 836 (1994); McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). Even taking into account the additional allegations in the First Amended Complaint, the Defendants still contend that any alleged failure to train or supervise Picklo does not rise to the level of deliberate indifference to constitutional rights, as the Plaintiff still has not specifically connected any such failure to the heinous criminal acts independently committed by Picklo. See, e.g., City of Canton v. Harris, 489 U.S. 378, 387-91 (1989). The Defendants assert that the Plaintiff cannot demonstrate any obvious or flagrant history of widespread abuse on the part of Picklo, nor any past acts that would indicate a propensity to commit such serious and violent crimes. See Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). As such, they argue that they could not

5

have been on notice of the need for improved training and supervision that could have averted the tragedy alleged by the Plaintiff.

Qualified immunity insulates government officials such as the Defendants from liability when performing discretionary functions, as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Hope v. Pelzer, 536 U.S. 730 (2002); Lassiter v. Alabama A&M University, 28 F.3d 1146, 1149-50 (11th Cir. 1994). This means that established pre-existing law must give government officials fair warning that their conduct violates constitutional rights. See Hope, 536 U.S. at 739-41.

The standard to determine qualified immunity is an objective one, as all government officials but the "plainly incompetent" or those who knowingly violate the law are entitled to immunity for their acts. See Malley v. Briggs, 475 U.S. 335, 341 (1986). In other words, qualified immunity is a defense used liberally by the courts, as the Eleventh Circuit has stated that "only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." Lassiter, 28 F.3d at 1148-49; see also Hope, 536 U.S. at 741-42. Factual specificity is therefore required when pleading claims under Section 1983 against individual government employees in order to overcome the qualified immunity defense. See, e.g., Andre v. Castor, 963 F. Supp. 1158, 1163-64 (M.D. Fla. 1997); Harris v. The District Board of Trustees of Polk Community College, 981 F. Supp. 1459 (M.D. Fla. 1997).

As the Court previously dismissed Count II against Taylor and Poindexter based on qualified immunity, the Defendants appropriately focus their attention on the "new" allegations in the First Amended Complaint, which are contained in paragraphs twenty (20) through twenty-eight (28). In those paragraphs, the Plaintiff claims that Taylor and Poindexter were responsible for "implementing and improving the rules and regulations" for training, supervising and disciplining agents such as

Picklo, but they were "grossly negligent" in failing to screen Picklo to ensure that he did not have any dangerous propensities or other attributes that would make him unfit to perform his duties.

Moreover, the Plaintiff claims that the Defendants were "grossly negligent and/or acted with deliberate indifference in their failure to perform background checks, polygraph examination and other investigations into the background and character" of agents such as Picklo, who the Plaintiff claims "was known to have an obvious and flagrant history of widespread abuse and past acts." The only example of this "widespread history" put forth by the Plaintiff is a report from Picklo's co-worker, Greg Horne, who claimed that Picklo threatened his life. First Amended Complaint, Exhibit A. The Plaintiff asserts that the Defendants were on constructive notice, yet still failed to discover this "propensity to commit such serious and violent crimes."

The Plaintiff alleges that the Defendants further failed to monitor Picklo to prevent him from "violating federal law" and the Plaintiff's constitutional rights. According to the Plaintiff, this conduct (or inaction) by the Defendants constitutes a "pattern of official policy" that resulted in the endangerment and injury to citizens, in violation of or with deliberate indifference to their clearly established constitutional rights. The Plaintiff concludes that the Defendants were "grossly negligent" in the hiring, training, and supervision of Picklo when they knew or should have known that he had the propensity to engage in unlawful conduct, and that the Defendants should have removed Picklo from his position or disciplined him for his conduct. This inaction on the part of Taylor and Poindexter allegedly rises to the level of "deliberate indifference" under Section 1983.

The Defendants argue that these additional allegations are still insufficient to overcome the defense of qualified immunity. They argue that the Plaintiff never specifies what responsibilities each Defendant allegedly had with regard to the Department's rules and regulations, nor does the Plaintiff ever identify these "rules and regulations" or specify how they would have impacted this case. They

7

also assert that there is nothing to indicate how either Taylor or Poindexter participated in, acknowledged, or "ascended to" any purported failure to screen Picklo, or what exactly they would have discovered had they performed additional or better screening prior to hiring Picklo. The only specific allegation, they point out, involves a purported threat made to a co-worker, with no allegation that this one verbal threat was directly germane to Picklo's employment with the Department or that it would have been discovered and substantiated by the Defendants. Lastly, Taylor and Poindexter argue that this one specific incident in no way amounts to a "pattern and official policy" of the Defendants, and there are no allegations or evidence to demonstrate that additional training or discipline would have prevented Picklo's rogue, violent conduct.

In addressing the Plaintiff's "deliberate indifference" allegations, the Defendants assert that, like the original Complaint, the First Amended Complaint fails to allege that Taylor and Poindexter were subjectively aware that Picklo posed a risk or serious harm, and in fact the allegations demonstrate that the Defendants actually knew nothing about any potential violent or abusive conduct on Picklo's part. Furthermore, there is allegedly nothing to demonstrate that Horne's complaint was ever verified, let alone that it would amount to a "history of widespread abuse" that would rise to the level of deliberate indifference. In any event, the Defendants argue that the Plaintiff cannot show how any further training or supervision would have somehow prevented the heinous, isolated, independent acts of Picklo. They therefore argue that qualified immunity now entitles them to dismissal with prejudice.

The Court finds that there are still no allegations in Count II of the First Amended Complaint that would demonstrate that the Defendants were deliberately indifferent to Frausto's constitutional rights. See Estelle, 429 U.S. at 97; Farmer, 511 U.S. at 836; McElligott, 182 F.3d at 1255. Although the Plaintiff futilely attempts to create some sort of pattern or policy through an unconfirmed, isolated incident involving a co-worker, the Defendants still convincingly demonstrate that any alleged failure

8

to train or supervise Picklo did not rise to the level of deliberate indifference to constitutional rights. There is simply no evidence of an obvious or flagrant history to demonstrate that Picklo would potentially commit such serious and violent crimes against the citizenry. See Harris, 489 U.S. at 387-89; Brown, 906 F.2d at 671.

Instead, the allegations reveal a single, isolated criminal act, with nothing to show that the Defendants should have been on notice of the need for improved training and supervision that could have averted the tragedy alleged by the Plaintiff. Despite the Plaintiff's attempt to highlight one unconfirmed threat to a co-worker with an insufficient connection to this case, there remains no "history of violent behavior and widespread abuse of police powers" that would somehow put the Defendants on notice of Picklo's tendencies. The allegations and evidence are simply insufficient to demonstrate that the Defendants knew or should have known that Picklo may have had tendencies to commit such violent acts based on his history, or that they somehow approved of or ratified these independent, terrible acts. See also Estelle, 429 U.S. at 97; Farmer, 511 U.S. at 836; McElligott, 182 F.3d at 1255; Harris, 489 U.S. at 387-89; Brown, 906 F.2d at 671.

The Court therefore finds that, as it previously held with regard to the original Complaint, Taylor and Poindexter remain entitled to qualified immunity from the Plaintiffs' Section 1983 claims. The Plaintiff has not even provided a motion response to attempt to meet the heightened pleading standard required to avoid qualified immunity. See, e.g., GJR Investments, Inc., 132 F.3d at 1367-69; Magluta, 256 F.3d at 1283-84. Therefore, because the Plaintiff has now repeatedly failed to meet the detailed, heightened pleading standards required to avoid qualified immunity, the Court will dismiss Count II of the First Amended Complaint with prejudice. See, e.g., GJR Investments, Inc. v. County of Escambia, Florida, 132 F.3d 1359, 1367-69 (11th Cir. 1998); Magluta v. Samples, 256 F.3d 1282, 1283-84 (11th Cir.

2001); Courson, 939 F.2d at 1487; Harbert Intern., Inc., 157 F.3d at 1281-82; Lumley, 327 F.3d at 1194; Cottone, 326 F.3d at 1358.

Accordingly, upon due consideration, it is hereby **ORDERED and ADJUDGED** that:

1. Defendants, Don Taylor and Ron W. Poindexter's, Motion to Dismiss First Amended Complaint (Dkt. 40) is **GRANTED.**

2. Count II of the Plaintiff's First Amended Complaint (Dkt. 34) is hereby **DISMISSED with prejudice.**

**DONE AND ORDERED** in Chambers at Jacksonville, Florida this 26th day of April, 2005.

JOHN H. MOORE II
United States District Judge

**Copies to:**    Counsel of Record
        Law Clerk